IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AQUA SHIELD, INC.,<br>Plaintiff,<br><br>vs.<br><br>INTER POOL COVER TEAM, ALUKOV HZ SPOL. SRO, ALUKOV, SPOL. SRO, POOL & SPA ENCLOSURES, LLC,<br>Defendants. | MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO PRECLUDE RELIANCE UPON EVIDENCE FOR FAILURE TO DISCLOSE OR PRODUCE IT<br><br>Case No. 2:09-CV-13 TS |

This matter is before the Court on Defendants' Motion for Summary Judgment on Invalidity of U.S. Patent No. 6,637,160 on Behalf of Defendants Interpool Cover Team, Alukov Hz Spol. S.R.O., Alukov, Spol. S.R.O., and Pool & Spa Enclosures, LLC;[1] Plaintiff Aqua Shield, Inc.'s Motion for Summary Judgment as to Defendants' Counterclaims I and II;[2] and Plaintiff's

[1]Docket No. 117.

[2]Docket No. 118.

Motion to Preclude Reliance upon Evidence for Failure to Disclose or Produce It.[3] For the reasons stated below, the Court will grant Plaintiff's Motion for Summary Judgment and deny the remaining motions.

## I. BACKGROUND

On November 28, 2011, the Court issued an order granting Plaintiff's motion for partial summary judgment ("Summary Judgment Order") and held that Inter Pool Cover Team, Alukov HZ spol Sro., Alukov, spol Sro., and Pool & Spa Enclosures, LLC (collectively "Defendants") installed a pool cover in Utah that infringes on Claims 1–14 and Claim 16 of Plaintiff's patent, U.S. Patent No. 6,637,160 (the "'160 Patent"). On October 18, 2012, the Court issued an order clarifying that the Summary Judgment Order did not dispose of Defendants' invalidity counterclaim.[4] The parties subsequently filed the instant motions.

## II. '160 PATENT AND PRIOR ART

The '160 patent contains one independent claim (Claim 1) and fifteen dependent claims (Claims 2-16). Plaintiff no longer alleges that Defendants' pool cover infringes Claim 15. Claims 1-16 of the '160 patent are reproduced below.

> 1. An apparatus for providing an enclosure for attachment to a building or for covering an area, comprising:
>
> (a) a plurality of arcuate panels, said panels having a first and second end, and a first and second side, wherein said panels are generally rectangular, planar panels;

[3] Docket No. 121.

[4] Docket No. 105.

(b) a plurality of arcuate frame members, said frame members having a first and second end, and a first and second side for receiving said panels, and an inner and an outer surface;
(c) a pair of end panels for attachment to the ends of the enclosure to complete the enclosure;
(d) means-for [sic] a plurality of horizontal frame members whereby the ends of the arcuate frame members are secured;
(e) means for a plurality of rollers disposed on said horizontal frame members whereby said horizontal frame members are movable thereon;
(f) means for a plurality of horizontal rails whereby the rollers are rollable thereon and the rails are able to be attached to a foundation; and,
(g) wherein said plurality of arcuate panels and said plurality of arcuate frame members are sized so that arcuate panels and arcuate frame members of smaller diameter are disposed toward the interior of said panels and frame members of larger diameter so that said panels and frame members are able to telescope one within each other, wherein said arcuate panels approximate the shape of one of a circumference of half a circle or one-fourth an ellipse and said end panels are generally flat and removable.

2. The apparatus of claim 1, wherein said arcuate panels approximate the shape of the circumference of half an ellipse.

3. The apparatus of claim 1, wherein said plurality of arcuate frame members further comprise a generally rectangular shaped housing having a pair of horizontally disposed U-shaped receptacles on said outer surface thereof for receiving said first and second sides of said arcuate panels and an inwardly extending flap disposed on said inner surface.

4. The apparatus of claim 3, herein [sic] said rectangular shaped housing has a slot therein, said slot disposed on said inner surface thereof for receiving said flap.

5. The apparatus of claim 4, herein [sic] said means for a plurality of horizontal frame members further comprise a downwardly disposed U-shaped frame having a plurality of rollers disposed internal said U-shaped frame, said rollers being used for contacting said means for a plurality of horizontal rails.

6. The apparatus of claim 5, wherein said U-shaped frame further comprises a downwardly disposed anchor plate thereon for contacting the rails.

7. The apparatus of claim 6, wherein said anchor plate further comprises a hook disposed on the lower end of said anchor plate.

8. The apparatus of claim 7, wherein said U-shaped frame further comprising an upwardly disposed U-shaped receptacle thereon for receiving said first end of said arcuate panels.

> 9. The apparatus of claim 8, said means for a plurality of horizontal rails further comprise a base plate upon which plate said rails are mounted and said rails are attached to a foundation.
>
> 10. The apparatus of claim 9, wherein said rail has an enlarged, exposed edge for receiving said hook of said anchor plate so that said anchor plate is secured to said rail.
>
> 11. The apparatus of claim 10, further comprising means for adding additional rails to said rail base plate whereby the number of rails varies.
>
> 12. The apparatus of claim 11, wherein said means for adding additional rails further comprises a slot disposed in the edge of said base plate for receiving the edge of another base plate.
>
> 13. Then [sic] apparatus of claim 12, further comprising a stop rod and an end plug disposed in the end of said rail.
>
> 14. The apparatus of claim 13, further comprising a cover for being placed over the tops of said rails and a spacer for being placed between said rails to enable one to walk over said rails.
>
> 15. The apparatus of claim 4 [sic], further comprising a plurality of hooks and straps for securing said arcuate panels to said arcuate frame members.
>
> 16. The apparatus of claim 15, wherein said arcuate panels are transparent.[5]

Defendant relies on five prior art references to support its invalidity argument: (1) U.S. Patent No. 3,979,782, issued to Joe Lamb in 1975 ("Lamb patent"); (2) U.S. Patent No. 4,175,361, issued to Masami Kumode in 1977 ("Kumode patent"); (3) U.S. Patent No. 4,683,686, issued to Veli Ozdemir in 1985 ("Ozdemir patent"); (4) U.S. Patent No. 5,845,343, issued to Harry Last in 1998 ("Last patent"); and (5) Australian Patent No. Au-A-69699/81, issued to M. Kumode ("Australian patent"). The four U.S. patents were all considered in the prosecution history of the '160 patent[6] and the Australian patent appears to be identical to the

[5]Docket No. 117, Ex. A at 31–32.

[6]Docket No. 117, Ex. A at 27–28.

Kumode patent. Although neither party provided the Court the drawing figures of the U.S. patents, the Court will judicially notice them.[7]

III. MOTION TO PRECLUDE RELIANCE

Plaintiff seeks to exclude the four United States patents relied upon by Defendants in their Motion for Summary Judgment because Defendants failed to timely disclose or produce them. A failure to disclose is governed by Rules 26 and 37(c) of the Federal Rules of Civil Procedure.

"'The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court.'"[8] The Court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose."[9] Nevertheless, the Court is guided by the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[10]

Balancing these factors, the Court finds that Defendants' failure to disclose the U.S. patents was harmless. Because the patents Plaintiff seeks to exclude were included in the

---

[7] *See United States v. Estep*, 760 F.2d 1060, 1063 (Fed. Cir. 1985) (holding that courts may notice "matters that are verifiable with certainty").

[8] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quoting *Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)).

[9] *Id.* (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)).

[10] *Id.* (citing *Newman v. GHS Osteopathic Inc.*, 60 F.3d 153 (3d Cir. 1995)).

prosecution history of the '160 patent, Plaintiff has long been aware of them and will not be prejudiced by Defendants' failure to disclose them. There is also no evidence that Defendants acted willfully or in bad faith. The Court will therefore deny Plaintiff's Motion.

## IV. SUMMARY JUDGMENT

### A. STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[11] The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.[12] To show that no genuine issue of material fact exists, the moving party has "the initial burden of production . . . and the burden of establishing that summary judgment is appropriate as a matter of law."[13] "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[14] "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[15]

---

[11]*See* Fed. R. Civ. P. 56(a).

[12]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[13]*Pelt v. Utah*, 539 F.3d 1271, 180 (10th Cir. 2008).

[14]*Sally Beauty Co., Inc., v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[15]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

On summary judgment the Court employs the same evidentiary standard of proof that would apply at trial.[16] At a trial in this case, clear and convincing evidence is required to overcome the '160 patent's presumed validity.[17] Defendants therefore have the burden to put forth each element of their invalidity counterclaim by clear and convincing evidence such that no reasonable jury could find otherwise.[18] Because Defendants rely exclusively on prior art that was considered by the PTO,[19] they also have "the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job . . . ."[20] If Defendants are unable to meet this burden, summary judgment is properly granted against them and in favor of Plaintiff.[21] If Defendants meet this burden, it will then be Plaintiff's burden to show that the '160 patent is valid.[22] Plaintiff, as the moving party seeking a holding that the '160

---

[16]*Id.* at 252.

[17]*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1563 (Fed. Cir. 1997).

[18]*Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

[19]Although the Australian patent was not considered by the PTO during the prosecution of the '160 patent, Defendants' moving papers never mention its content. Moreover, the Australian patent appears to depict the exact same invention that is described in the Kumode patent, which was considered by the PTO.

[20]*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (quoting *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

[21]*See K-Tec, Inc. v. Vita-Mix Corp.*, 729 F. Supp. 2d 1312, 1316 (D. Utah 2010) *aff'd*, 696 F.3d 1364 (Fed. Cir. 2012) ("'[W]hen a party has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case in accordance with the applicable standard of proof, summary judgment is properly granted against that party.'") (alteration in original) (quoting *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1319–20 (Fed. Cir. 2010)).

[22]*Id.*

patent is not invalid, "must demonstrate that [Defendants have] failed to produce clear and convincing evidence of invalidity."[23]

B. DISCUSSION

*1. Noninfringement*

In its Motion for Summary Judgment, Plaintiff first asks this Court to enter summary judgment in its favor on Count I, Defendants' counterclaim of noninfringement. The Court will grant the Motion as it relates to noninfringement because Defendants do not oppose the Motion and because infringement was previously decided in Plaintiff's favor in the Court's November 28, 2011 order.[24]

*2. Anticipation*

Plaintiff next moves for summary judgment on Count II, Defendants' invalidity counterclaim arguing that the '160 patent was neither anticipated nor made obvious by prior art. Defendants argue that the opposite is true.

Defendants first argue that the '160 patent is invalid because it is anticipated by prior art. A patent is invalid as anticipated if "the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States . . . ."[25]

---

[23] *Id.* (citing *Eli Lilly and Co.*, 251 F.3d at 962).

[24] Docket No. 87.

[25] 35 U.S.C. § 102(b).

"The first step of an anticipation analysis is claim construction."[26] "The second step in an anticipation analysis involves a comparison of the construed claim to the prior art."[27] To anticipate, a single prior art reference[28] must disclose "each and every limitation of the claimed invention[,] . . . must be enabling[,] and [must] describe . . . [the] claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention."[29] In other words, "[t]o find that prior art anticipates, this Court must conclude that, as viewed by a person of ordinary skill in the field, there is no difference between the claimed invention" and a single prior art reference.[30]

Defendants' anticipation argument does not satisfy their burden on summary judgment. First, as Plaintiff points out, Defendants have not compared the construed claims of the '160 patent to the prior art—in this case, the Ozdemir patent. Indeed, Defendants' motion papers contain no analysis of the Court's claim construction. Second, Defendants have not introduced evidence showing that the Ozdemir patent discloses each limitation of the '160 patent. Defendant makes no effort to show, for example, that the Ozdemir patent teaches an invention

---

[26] *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000).

[27] *Id.*

[28] *In re Schreiber*, 128 F.3d 1473, 1780 (Fed. Cir. 1997) ("[A]nticipation requires that the identical invention is described in a single prior art reference.") (internal quotation marks omitted) (citing *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1236 (Fed. Cir. 1989)).

[29] *Id.* (alterations in original) (quoting *In re Paulsen*, 30 F.3d 1475, 1478–79 (Fed. Cir. 1994)).

[30] *EdgeCo. Inc. v. FastCap, LLC,* 2005 WL 1630836, at *14 (D.N.J. July 11, 2005) (citing *Scripps Clinic & Res. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991)).

with a pair of removable end panels, telescoping frame members, or arcuate panels as required by claims 1–14 and 16 of the '160 patent. Defendants also have not discussed whether the Ozdemir patent teaches the hook-like terminations to prevent dislocation of the frame members from the track member required by claims 7 and 10 of the '160 patent. Defendants, therefore, have failed to prove by clear and convincing evidence that the Ozdemir patent anticipates any claim of the '160 patent.

*3. Obviousness*

Defendants next argue that the '160 patent is made obvious by prior art. Obviousness is governed by 35 U.S.C. § 103(a), which forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."[31] "The grant of summary judgment of invalidity for obviousness must be done on a claim by claim basis."[32] "The accused infringer must prove by clear and convincing evidence that each claim that is challenged cannot reasonably be held to be non-obvious."[33] Because "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) *shall be presumed valid independently of*

---

[31] *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 3 (1966).

[32] *Knoll Pharm. Co., Inc. v. Teva Pharms. USA, Inc.*, 367 F.3d 1381, 1384 (Fed. Cir. 2004) (quoting *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1371 (Fed. Cir. 2003)).

[33] *Id.* (quoting *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed. Cir. 1988)).

*the validity of other claims*" it cannot be assumed that claims dependent on an invalid claim are also invalid.[34]

The obviousness of a claimed invention may be based on a combination of different pieces of prior art if "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so."[35] "Although the incentive to combine may be inferred from the nature of the problem,"[36] "[t]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness."[37] This requirement "can be useful to prevent hindsight when determining whether a combination of elements known in the art would have been obvious.[38]

Defendants have not met their burden to show that the '160 patent is made obvious by prior art. For starters, Plaintiff correctly notes that Defendants have not argued obviousness on a claim-by-claim basis. Defendants also do not try to show that all of the elements of even a single claim in the '160 patent were made obvious by prior art. Again, Plaintiff has pointed out that

---

[34]*Sys. Div., Inc. v. Teknek LLC*, 59 F. App'x 333, 344 (Fed. Cir. 2003) (alteration in original) (quoting 35 U.S.C. § 282).

[35]*Pfizer Inc. v. Apotex*, 480 F.3d 1348, 1361 (Fed. Cir. 2007).

[36]*K-Tec*, 729 F. Supp. 2d at 1325 (citing *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008)).

[37]*Innogenetics*, 512 F.3d at 1373.

[38]*Norgen Inc. v. Int'l Trade Comm'n*, 699 F.3d 1317, 1322 (Fed. Cir. 2012).

Defendants make no mention of, for example, the removable end panels taught by claim 1 and Defendants' motion papers contain no analysis of claims 2-14 or 16 of the '160 patent.

Defendants also have not articulated why a person of ordinary skill in the art would have been motivated to combine the prior art to produce the claimed invention. While Defendants correctly contend that the Ozdemir patent teaches the desirability of eliminating the longitudinal struts that were present in the Kumode patent, Defendants' remaining arguments regarding a motivation to combine the elements of the prior art are conclusory and general in nature. In light of the need to avoid the bias of hindsight when determining obviousness, Defendants' conclusory statements that a person of ordinary skill would have been motivated to combine the prior art to produce the invention taught by the '160 patent are insufficient to overcome the patent's presumed validity.

V. CONCLUSION

Based on the foregoing, the Court determines that Plaintiff has demonstrated that Defendants have failed to present clear and convincing evidence that any claim of the '160 patent is invalid in light of the prior art. Defendants therefore have failed to overcome the presumed validity of the '160 patent and summary judgment must be granted in favor of Plaintiff and against Defendants.

It is therefore

ORDERED that Defendant's Motion for Summary Judgment on Invalidity (Docket No. 117) is DENIED. It is further

ORDERED that Plaintiff's Motion for Summary Judgment as to Defendants' Counterclaims I and II (Docket No. 118) is GRANTED and said counterclaims are dismissed. It is further

ORDERED that Plaintiff's Motion to Preclude Reliance upon Evidence for Failure to Disclose or Produce It (Docket No. 121) is DENIED. It is further

ORDERED that the hearing set in this matter for February 7, 2013, is STRICKEN. A final pretrial conference in this matter is set for February 7, 2013, at 2:30 P.M. and trial is set to begin on February 19, 2013, at 8:30 A.M.

DATED January 15, 2013.

BY THE COURT:

TED STEWART
United States District Judge