IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| AQUA SHIELD, INC., A New York Corporation,<br><br>　　　Plaintiff,<br><br>vs.<br><br>INTERPOOL COVER TEAM, ALUKOV HZ SPOL. S.R.O., ALUKOV, SPOL. S.R.O., POOL & SPA ENCLOSURES, LLC,<br><br>　　　Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S RULE 59 MOTION TO ALTER JUDGMENT<br><br><br>Case No. 2:09-CV-13 TS |

This matter is before the Court on Plaintiff's Rule 59 Motion to Alter Judgment.[1]  For the reasons discussed below, the Court will grant Plaintiff's Motion to award a reasonable royalty and to allow Plaintiff to seek costs, but will deny the Motion in all other respects.

---

[1]Docket No. 167.

1

I.  BACKGROUND

On March 19–20, 2013, the Court held a two-day bench trial on this case.  This Court previously found that Defendants Inter Pool Cover Team, Alukov HZ Spol. S.R.O., Alukov, Spol. S.R.O., and Pool & Spa Enclosures, LLC (collectively "Defendants") infringed Plaintiff Aqua Shield Inc.'s ("Aqua Shield") patent, U.S. Patent No. 6,637,160 ("the '160 Patent").  The Court published Findings of Fact and Conclusions of Law[2] and ordered judgment in favor of Plaintiff on Plaintiff's claim that Defendants' models Universe, Laguna, Tropea, Combi, Style, Veranda, Spa, and Orient infringe claims 1–14 and 16 of the '160 Patent.  Further, the Court awarded zero damages and ordered a permanent injunction.  Plaintiff now seeks to amend the judgment to include (1) a finding of willfulness, (2) reasonable compensation, and (3) costs.

On November 18, 2013, the Court heard argument on Plaintiff's Motion.  During oral argument, Defendants introduced the case of *Unicom Monitoring, LLC v. Cencom, Inc.*[3]  Because the case was not referred to in the briefs, the Court granted Plaintiff ten days to respond to the case.  Plaintiff filed its Response.[4]  Defendants filed an Objection to the Response,[5] arguing that Plaintiff abused its privilege to respond to new authority by rehashing prior arguments and by making new arguments on how to calculate a reasonable royalty.  The Court considered both

---

[2]Docket No. 165.

[3]06-CV-1166 (MLC), 2013 WL 1704300 (D.N.J. April 19, 2013) (unpublished).

[4]Docket No. 175.

[5]Docket No. 177.

filings but found neither to be particularly helpful.  Further, *Unicom* is distinguishable because the record in that case did not reflect infringer's profits, as the record in this case does.

## II.  DISCUSSION

The purpose of a motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure "is to correct manifest errors of law or to present newly discovered evidence."[6]  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[7]  Such a motion is an inappropriate vehicle to reargue an issue previously addressed by the court such as "when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion."[8]

A.   WILLFULNESS

Plaintiff argues that Defendants' infringement was willful.  Plaintiff cites no new evidence and no intervening change in controlling law, and instead argues that the Court misunderstood important facts and controlling law in determining that Defendants' infringement was not willful.

---

[6] *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994) (citation and internal quotation marks omitted).

[7] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[8] *Id.*

The word willful "is generally understood to refer to conduct that is not merely negligent."[9] A "[d]etermination of willfulness is made on consideration of the totality of the circumstances."[10] Rigid rules do not control determinations of willfulness because the district court is in the best position to consider the evidence, the testimony, and the demeanor of witnesses.[11] The standard for proving willfulness is "whether, under all the circumstances, a reasonable person would prudently conduct himself with any confidence that a court might hold the patent invalid or not infringed."[12]

Plaintiff argues that Defendants' conduct was willful because (1) Defendants did not rely on an opinion of patent counsel, (2) after the Court's infringement Order, Defendants continued to ship pool enclosures dismantled in parts, and (3) Defendants did not change their manufacturing and shipping practices until after the Court's infringement Order and validity ruling.

Plaintiff recycles the same arguments that it made at trial. The Court found no willfulness because "[p]rior to the Court's Order on infringement, Defendants had a reasonable belief that their pool enclosures did not infringe the '160 Patent" and "[a]fter the Court's infringement Order, Defendants made a good faith effort to design around the '160 Patent."[13]

---

[9] *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004).

[10] *Id.*

[11] *Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110 (Fed. Cir. 1986).

[12] *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988).

[13] Docket No. 165, at 10.

Plaintiff presented evidence at trial that Defendants continued to import infringing products after the Court's infringement Order on November 28, 2011. This Court considered Plaintiff's evidence at trial and adequately addressed willfulness in its Findings of Fact and Conclusions of Law. Under the circumstances presented here, the Court finds that Defendants prudently conducted themselves with confidence that a court might hold the patent invalid or not infringed. Once there was a finding of infringement, Defendants made a good faith effort to design around the '160 Patent. After the Court's rulings on infringement and validity, Defendants modified their enclosures to permanently fix the end panels in place.[14] Thus, because Plaintiff merely repackages arguments that this Court has already rejected, the Court will deny Plaintiff's Motion to Alter Judgment on this ground.

B.     COMPENSATION

Plaintiff next argues that the Court erred by not awarding lost profits or a reasonable royalty. The Patent Act provides that upon a finding of infringement, a court "shall award . . . damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."[15]  A reasonable royalty is

> [t]he amount that a licensor (such as a patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain the license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to

---

[14]Docket No. 153, at 79.

[15]35 U.S.C. § 284 (2006).

      make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.[16]

In seeking a reasonable royalty, the patentee bears the burden of proving legally sufficient evidence that supports the royalty sought.[17] The Patent Act "requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute."[18]

      Plaintiff argues that the Court erred by not relying on the licensing negotiations that the parties conducted in 2009 ("the 2009 negotiations") to determine a reasonable royalty. Plaintiff further argues that the Court erred by disregarding the damages testimony of Bob Brooks ("Brooks") who is the inventor of the '160 Patent and the president of Aqua Shield. Finally, Plaintiff argues that the Court had sufficient information to determine a reasonable royalty even if the Court disregarded the 2009 negotiations and Brooks's testimony, because Defendants' profits on infringing sales were known.

      *1.    Negotiations*

In 2009, the parties met to discuss licensing the '160 Patent to Defendants. The 2009 negotiations ended without an agreement being reached. Plaintiff argues that the Court erred by not considering the parties' 2009 negotiations in calculating a reasonable royalty. Plaintiff cites to numerous cases out of the Federal Circuit that consider royalty rates offered in negotiations

---

[16] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

[17] *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990).

[18] *Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347, 363 (3d Cir. 1981), *aff'd on other grounds*, 461 U.S. 648 (1983).

during litigation.[19]  However, the United States Supreme Court has long held otherwise.[20]  One court has called the prohibition on using settlement negotiations during litigation to determine a reasonable royalty rate "a century-old rule."[21]

Even if it would be proper for the Court to consider the 2009 negotiations, the Court already found that the negotiations did not provide evidence of a reasonable royalty rate.  The Court found that the negotiations took place four years after this case began, the impetus for the negotiations was to avoid the costs of litigation, and the parties attempted to negotiate not only a licensing agreement, but an agreement that would allow Plaintiff to resell Defendants' products.  As the Court noted in its Conclusions of Law, the 2009 negotiations "do not provide evidence of a reasonable royalty rate."[22]  Therefore, the Court will deny Plaintiff's Motion on this ground.

  2.  *Brooks's Testimony*

Plaintiff next argues that Brooks's testimony regarding damages was proper lay testimony and should not have been disregarded.  As stated in the Court's Conclusions of Law, the Court found Brooks's testimony regarding Aqua Shield's lost profits to be "not credible"[23] and even if

---

[19]*See, e.g.*, *ResQnet.com, Inc. v. Lansa*, 594 F.3d 860, 872 (Fed. Cir. 2010).

[20]*Rude v. Wescott*, 130 U.S. 152, 164 (1889); *Cornely v. Marckwald*, 131 U.S. 159, 161 (1889).

[21]*Wang Labs., Inc. v. Mitsubishi Elecs. Am. Inc.*, 860 F. Supp. 1448, 1452 (C.D. Cal. 1993).

[22]Docket No. 165, at 20.

[23]*Id.* at 16.

it were credible it was not "adequate to show lost profits."[24]  Numerous factors unrelated to the infringement were at play and these factors could have affected Plaintiff's profits.  Plaintiff failed to meet its burden to prove lost profits through Brooks's testimony.  The Court will not alter its judgment to award a reasonable royalty based on Brooks's testimony.

    3.    *Infringers' Profits*

Plaintiff next argues that the Court had a statutory obligation to award a reasonable royalty and that the Court had sufficient information to calculate a reasonable royalty based on Defendants' profits.

"In a normal negotiation, the potential licensee has three basic choices: forego all use of the invention; pay the agreed royalty; infringe the patent and risk litigation."[25]  To determine a reasonable royalty, the Court must assume that Defendants would have chosen the second option had they known in 2005 the patent was valid and their products infringed.  The Federal Circuit has stated that the Patent Act does not require a patentee to prove actual damages.  Ordinarily, the Court has an obligation to award a reasonable royalty when lost profits are not proven.[26]  However, "that does not mean that a patentee who puts on *little or no* satisfactory evidence of a reasonable royalty can successfully appeal on the ground that the amount awarded by the court is not reasonable and therefore contravenes section 284."[27]  Only when the record is completely

---

[24] *Id.*

[25] *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1576 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse*, 383 F.3d 1337.

[26] 35 U.S.C. § 284.

[27] *Dow Chem. Co.*, 341 F.3d at 1382 (emphasis added).

devoid of evidence from which the Court can determine a reasonable royalty, can the Court order an award of zero dollars.[28] In its Findings of Fact and Conclusions of Law, the Court awarded zero dollars in damages. However, the Court did not consider the infringer's profits to arrive at this conclusion.

"A reasonable royalty may . . . be based on the infringer's profits."[29] Although a hypothetical license requires the royalty to be determined in light of anticipated profits when the infringement began, courts have held that evidence of subsequent actual profits is relevant to forming a judgment as to anticipated profits.[30] "While a plaintiff in a patent infringement action is no longer entitled to recover profits derived by the sale of the infringing items, the infringer's profits may constitute evidence tending to show the plaintiff's damages or be a relevant factor in the calculation of a reasonable royalty."[31] The Federal Circuit has held that a number of different methodologies can be employed for calculating a reasonable royalty including basing the royalty on a percentage of the infringer's gross or net profit, as a set amount per infringing product sold, or as a percentage of the gross or net price received for each infringing product.[32]

---

[28] *Compare Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) (emphasis added) (holding district court's award of zero damages to be error), *with Devex*, 667 F.2d at 363 (upholding district court's award of zero damages).

[29] *Linkco, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 190 (S.D.N.Y. 2002).

[30] *See, e.g.*, *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Deriick Co.*, 895 F.2d 1404, 1404–06 (Fed. Cir. 1990).

[31] *Jenn-Air Corp. v. Penn Ventilator Co., Inc.*, 394 F. Supp. 665, 675 (E.D. Pa. 1975).

[32] *Fromson*, 853 F.2d at 1578.

The Federal Circuit, in discussing its holding in *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, noted that the case "supports the proposition that an actual infringer's profit margin can be relevant to the determination of a royalty rate in a hypothetical negotiation."[33] In *Lindemann*, the district court awarded plaintiff $10,000 as a reasonable royalty.[34] Because plaintiff failed to produce sufficient evidence of damages, the court used defendant's profit margin as a tool for determining a reasonable royalty.[35] The court noted that "[i]n view of the sparse and totally inadequate record [plaintiff] created at trial, we cannot say that [plaintiff] proved entitlement to an award greater than $10,000."[36]

Plaintiff argues that it submitted the underlying profit and loss statements for each infringing sale[37] and that the Court need only do simple arithmetic in order to arrive at a reasonable royalty rate based on these net profit figures. Plaintiff further contends that Defendants' net profit on infringing sales ranged from 12% to 39%.[38] The Court cannot rely on these figures as representing net profits because—while the financial records reflect transaction costs associated with infringing sales—they do not reflect overhead costs across the company.

---

[33] *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001).

[34] *Lindemann*, 895 F.2d at 1404.

[35] *Id.*

[36] *Id.* at 1408.

[37] Docket No. 167 Ex. 4; *see also* Trial Ex. DD.

[38] Docket No. 167 Ex. 4.

The figure that Plaintiff labels "gross profit" represents total sales income on each infringing pool cover. The figure that Plaintiff labels "net profit" represents the "gross profit" figure minus "cost of goods sold" and "additional expenses" relating to installing the particular infringing pool cover.[39] This figure does not represent a credible net profit figure because it reflects only transaction expenses related to the sale of each individual infringing cover. It does not reflect company-wide salaries or non-transaction related overhead. Thus, the percentages that Plaintiff cites are not accurate net profit figures. The Court, therefore, cannot rely on these figures to represent Defendants' net profit in determining a reasonable royalty.

The record contains additional information related to Defendants' profits. Alexander Stonkus ("Stonkus"), the CEO of Pool & Spa Enclosures, LLC ("P&S"), testified that gross revenue on infringing sales was $2,700,000, that gross profit on infringing sales was just over $600,000, and ultimately the net profit margin on infringing sales was approximately 5%.[40] Jan Zitko, the president of Inter Pool Cover Team corroborated these figures, noting that the Alukov has a yearly corporate net profit on all sales after taxation that is between 5% and 8%.[41] He also noted that profit may be less than that on sales in the United States.[42] Stonkus similarly testified that Alukov's profit margin on all sales—which is 5%—is no different from its profit margin on

---

[39] Id.

[40] Docket No. 152, at 228–29.

[41] Id. at 293

[42] Id. at 302.

11

infringing sales.[43] Alexander Stonkus also testified that P&S has operated at a loss since it began.[44] Utilizing the information above, the Court finds that Defendants' profits on infringing sales is 5%. This yields a net profit on infringing sales of $135,000.

The Court found that the '160 Patent has several advantages over pool covers that do not utilize the '160 Patent. The patented pool covers are easier to construct, are more aerodynamic, have a higher snow-load capacity, and are more leak-proof than other square or boxy pool covers. Considering these benefits, while still allowing Defendants a profit on infringing sales, requires the Court to use its best ability to estimate what Defendants would have likely paid for the patented design.

In a willing negotiation between the parties at the time infringement began, in order to enjoy the advantages of the patent that the Court noted, the Court finds that Defendants would have been willing to pay 5% of their net profits on infringing sales as a reasonable royalty to avoid infringement. As explained in the Findings of Fact and Conclusions of Law, six of the *Georgia-Pacific* factors weigh in favor of a higher royalty, therefore, the Court finds this number should be adjusted upward to 8%. This results in a royalty of $10,800.

In a hypothetical negotiation, the Court finds Defendants would not have paid more for the license because they would have likely gone without the benefits of the '160 Patent and designed around it, as they have done now. Based on the preceding discussion, the Court finds

---

[43] *Id.* at 230.

[44] *Id.*

that the parties, at the outset of this litigation, would have negotiated a reasonable royalty of 8% of Defendants' net profits, or $10,800.

In this case, like in *Lindemann*, Plaintiff did not adequately meet its burden. Plaintiff "bore the burden and yet failed to adduce evidence dictating a particular amount, [and] left the [judge] with the widest range of choice."[45] However, because the statute is quite clear that the Court "shall" award damages "in no event less than a reasonable royalty,"[46] the Court will alter its Judgment to award a reasonable royalty as stated above.

### 4. *Model Elegant*

Plaintiff also argues that $450,000 of revenue from the model Elegant should be added to the $2,700,000 of sales the Court already found to infringe. In support, Plaintiff argues that the Utah Installation, which the Court found to infringe, was a model Elegant. Although Brooks averred that the Elegant was the model installed in Syracuse, Utah, the Court never adopted such a finding. While it is true that the Court found that the Utah Installation infringes the '160 Patent, the Court did not find that the Utah Installation was a model Elegant. The Findings of Fact and Conclusions of Law adequately addresses the Model Elegant and will not be disturbed.

### C. COSTS

The Patent Act provides that the Court should award the prevailing party "interest and costs as fixed by the court."[47] Plaintiff argues that the Findings of Fact and Conclusions of Law

---

[45] *Lindemann*, 895 F.2d at 1406.

[46] 35 U.S.C. § 284.

[47] *Id.*

failed to award costs to Plaintiff. Aqua Shield has yet to file a motion for costs and the Court has no information as to the extent of Plaintiff's costs. Plaintiff may seek an award of costs under 35 U.S.C. § 284, but the Court will not amend the Judgment to award a set sum at this time.

### III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion to Alter Judgment (Docket No. 167) is GRANTED IN PART AND DENIED IN PART. The Court grants the Motion to award Plaintiff a reasonable royalty of $10,800. The Court further grants the Motion to allow Plaintiff to seek an award of costs. The Motion is denied in all other respects.

The Clerk of the Court is directed to amend the Judgment (Docket No. 166) to award a reasonable royalty to Plaintiff in the amount of $10,800.

DATED   December 9, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge