IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AQUA SHIELD, INC., a New York corporation,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>INTER POOL COVER TEAM, ALUKOV HZ SPOL. S.RO., ALUKOV, SPOL. S.R.O., POOL & SPA ENCLOSURES, LLC,<br><br>　　　　　　　　Defendants. | MEMORANDUM DECISION AND ORDER ON REMAND<br><br><br><br>Case No. 2:09-CV-13 TS<br><br>District Judge Ted Stewart |

　　　　This matter is before the Court following remand from the United States Court of Appeals for the Federal Circuit. The Federal Circuit vacated the Court's decision concerning the amount of the reasonable royalty and the finding of no willfulness, which led to the denial of enhanced damages. The Federal Circuit remanded for further proceedings on these issues. For the reasons discussed below, the Court finds that Plaintiff is entitled to damages in the amount of $216,000 and that Defendants' conduct was willful, but the Court declines to award enhanced damages or attorney's fees.

I.  BACKGROUND

　　　　Plaintiff brought this action in the Eastern District of New York on October 18, 2005, alleging that Defendants infringed U.S. Patent No. 6,637,160 (the "'160 Patent"). Plaintiff sought, but was ultimately denied, a preliminary injunction. "The district court in New York denied the requested preliminary injunction because Aqua Shield lacked information needed to

1

show a likelihood of success on the merits and because of questions about personal jurisdiction over the defendants."[1]  The case was eventually transferred to this Court.

> Aqua Shield moved for summary judgment of infringement based on IPC's sales of various enclosure models. . . . IPC responded with noninfringement arguments only as to claims 10 and 15, not the other fourteen asserted claims. The district court held that there was no genuine issue of fact about IPC's infringement of all claims except claim 15, and therefore entered summary judgment of infringement of claims 1–14 and 16.  Aqua Shield later dropped its allegation of infringement of claim 15, and it presented no infringement issues at the later trial.
> With respect to invalidity, the parties filed cross-motions for summary judgment.  As to anticipation, the district court ruled that IPC failed to compare[ ] the construed claims of the '160 patent to the prior art and did not introduce[ ] evidence showing that the [prior art] discloses each limitation of the '160 patent. As to obviousness, the court ruled that IPC did not argue[ ] obviousness on a claim-by-claim basis, try to show that all of the elements of even a single claim in the '160 patent were made obvious by prior art, or articulate[ ] why a person of ordinary skill in the art would have been motivated to combine the prior art to produce the claimed invention.  For those reasons the district court granted summary judgment in favor of Aqua Shield regarding validity.[2]

The Court held a two-day bench trial in March 2013 concerning issues of relief.  In the Court's Findings of Facts and Conclusions of Law, the Court found that Plaintiff had failed to prove damages, that Defendants' conduct was not willful, and that Plaintiff was not entitled to attorney's fees.  The Court did, however, enter a permanent injunction.

Plaintiff moved the Court to alter its judgment to include a finding of willfulness, reasonable compensation, and costs.  The Court agreed to amend the judgment in part, awarding Plaintiff $10,800 in damages as a reasonable royalty.  The Court declined to otherwise amend the judgment.

---

[1] *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 768 (Fed. Cir. 2014).

[2] *Id*. at 768–69 (alterations in original) (citations and quotation marks omitted).

Plaintiff appealed the judgment of the Court and the Federal Circuit vacated the Court's royalty award, non-willfulness finding, and denial of enhanced damages and attorney's fees.

On appeal, Plaintiff challenged the Court's application of the hypothetical-negotiation approach. The Federal Circuit agreed, in part, finding that the Court erred in the use it made of Defendants' profit figures. The Federal Circuit found that the Court erred "in treating the profits IPC actually earned during the period of infringement as a royalty cap. That treatment incorrectly replaces the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened."[3] This Court's analysis "incorrectly replace[d] the inquiry into the parties' anticipation of what profits would be earned *if a royalty (of amounts being negotiated) were to be paid* with an inquiry into what profits were earned *when IPC was charging prices without accounting for any royalty*."[4]

The Federal Circuit noted that it had "not been shown proof that this case is different from the typical one in which pricing might be adjusted to account for a royalty based on sales price. Indeed, IPC has not pointed to any evidence supporting the district court's conclusion that a royalty should be a percentage of profits rather than sales revenues."[5] The court vacated the royalty calculation and remanded for redetermination. The Federal Circuit directed this Court to "consider all relevant record evidence, including the advantages of the patented product, the ease

---

[3] *Id.* at 772.

[4] *Id.*

[5] *Id.*

and cost of designing around the claimed invention, and the relevance of IPC's actual profits to what IPC's expectations would have been in a hypothetical negotiation."[6]

On the issue of willfulness, this Court reasoned that prior to its infringement decision, Defendants did not act willfully based on the decision of the New York court to deny Plaintiff's motion for a preliminary injunction. On appeal, the Federal Circuit found that "the Eastern District of New York's decision to deny Aqua Shield's motion for a preliminary injunction cannot reasonably be read to support a conclusion that any substantial basis existed for doubting infringement or validity."[7] The court went on to state:

> The New York court denied Aqua Shield's motion because of personal-jurisdiction questions and because Aqua Shield lacked sufficient knowledge of IPC's product to make the required showing of a likelihood of success on the merits. Personal jurisdiction does not speak to infringement or validity at all. And Aqua Shield's ignorance of IPC's products appears irrelevant to a validity analysis and does not indicate what an infringement analysis of those products would show once the details of those products were fully known—as they were all along to IPC. The denial of Aqua Shield's motion for a preliminary injunction is thus a legally insufficient reason for determining that IPC did not willfully infringe.[8]

On the issue of willfulness after the Court had issued its decision finding infringement, this Court had relied on testimony that Defendants had attempted to design around the '160 patent by permanently fixing the end panels in place. The Federal Circuit found that this evidence "stops short of demonstrating that IPC did in fact design around the '160 patent and, if so, when."[9] "Questions remain about whether that change was actually implemented or whether

---

[6] *Id.* at 773.

[7] *Id.* at 774.

[8] *Id.*

[9] *Id.*

4

the resulting products avoided infringement. Both inquiries are relevant to the issue of willfulness."[10]

The Federal Circuit thus vacated the Court's determination concerning willfulness. The court stated that "[o]n remand, the district court should focus on IPC's defenses as articulated during the infringement and invalidity proceedings—during which IPC presented no infringement defenses for claims 2–9, 11–14, or 16, and presented no element-by-element argument for invalidity."[11]

> If the court finds that the defenses were objectively unreasonable, in the sense that no "reasonable litigant could realistically expect" them to succeed, it should proceed to consider *Seagate*'s second requirement. On that issue, we note that the objective baselessness of an infringer's defenses, assessed on the litigation record, may have a strong bearing on whether the "objectively-defined risk" of infringement "was either known or so obvious that it should have been known to the accused infringer."[12]

The Federal Circuit further directed that "[i]f the court determines on remand that IPC willfully infringed Aqua Shield's patent, it should reconsider its decision to deny enhanced damages and attorney's fees."[13] With this background in mind, the Court considers the issues currently before it.

---

[10] *Id.*

[11] *Id.* (citations omitted).

[12] *Id.* (quoting *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).

[13] *Id.* at 775.

## II.  DISCUSSION

A.  REASONABLE ROYALTY

Upon a finding of infringement, a patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."[14]

"The [reasonable] royalty may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant."[15] "The hypothetical negotiation seeks to determine the terms of the license agreement the parties would have reached had they negotiated at arms length when infringement began."[16]

The following factors are considered in determining a reasonable royalty:

1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.
2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.
3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.
4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.
5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.
6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.
7. The duration of the patent and the term of the license.

---

[14] 35 U.S.C. § 284.

[15] *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995).

[16] *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012).

6

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.[17]

The Court previously considered these factors and found that an 8% royalty rate would be appropriate. The parties do not appear to have appealed this determination and both parties apply the 8% royalty rate in their supplemental briefing. Therefore, the Court will continue to apply the 8% royalty rate.[18] The question then becomes what is the appropriate royalty base to which the royalty rate should be applied.[19]

---

[17] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

[18] The Federal Circuit directed that the Court, in redetermining its royalty calculation, "should consider all relevant record evidence, including the advantages of the patented product, the ease and cost of designing around the claimed invention, and the relevance of IPC's actual profits to what IPC's expectations would have been in a hypothetical negotiation." *Aqua Shield*,

Plaintiff argues that the royalty rate should be applied to the selling price of the infringing devices. The evidence presented at trial supports this position. The parties' licensing negotiations focused on Defendants' selling price.[20] The testimony of Alex Stonkus and Jan Zitko, while admittedly less than clear, also supports the notions that royalty payments would be based on sales.[21]

Defendants argue that any reasonable royalty should be based on profits rather than sales. However, there is no evidence to support this argument. While the Court heard testimony about the parties' profits, there is no evidence suggesting that the hypothetical negotiation would have resulted in a royalty based upon profits. As on appeal, Defendants have "not pointed to any evidence . . . that a royalty should be a percentage of profits rather than sales."[22]

The evidence at trial showed that Defendants had sold $2.7 million worth of infringing products. Applying the 8% royalty rate to this amount, the Court finds that Plaintiff is entitled to a reasonable royalty of $216,000.

B.   WILLFULNESS

The Federal Circuit has held that "to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood

---

774 F.3d at 773. Having considered these factors, the Court continues to find that an 8% royalty rate is reasonable.

[19] *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("A reasonable royalty may be a lump-sum payment not calculated on a per unit basis, but it may also be, and often is, a running payment that varies with the number of infringing units. In that event, it generally has two prongs: a royalty base and a royalty rate.").

[20] Trial Ex. CC.

[21] Trial Tr. 237–44, 302–04.

[22] *Aqua Shield*, 774 F.3d at 772.

that its actions constituted infringement of a valid patent."[23] "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer."[24]

As to the first requirement, the Federal Circuit held on appeal that this Court "should focus on IPC's defenses as articulated during the infringement and invalidity proceedings."[25] The court directed that "[i]f the court finds that the defenses were objectively unreasonable, in the sense that no 'reasonable litigant could reasonably expect' them to succeed, it should proceed to consider *Seagate*'s second requirement."[26] On that issue, the Federal Circuit noted "that the objective baselessness of an infringer's defenses, assessed on the litigation record, may have a strong bearing on whether the 'objectively-defined risk' of infringement 'was either known or so obvious that it should have been known to the accused infringer.'"[27]

"Objective recklessness will not be found where the accused infringer has raised a 'substantial question' as to the validity or noninfringement of the patent."[28] Thus, the Court must consider whether Defendants' non-infringement and invalidity defenses were objectively

---

[23] *In re Seagate*, 497 F.3d at 1371.

[24] *Id.*

[25] *Aqua Shield*, 774 F.3d at 774.

[26] *Id.* (quoting *Bard*, 682 F.3d at 1008).

[27] *Id.* (quoting *In re Seagate*, 497 F.3d at 1371).

[28] *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 776 F.3d 837, 844 (Fed. Cir. 2015).

reasonable. Based on the record before it, the Court finds they were not as no "reasonable litigant could realistically expect"[29] those defenses to succeed "as articulated."[30]

During the proceedings related to infringement, Defendants only presented claims of non-infringement as to two of the sixteen claims asserted against them. And on only one claim—claim 15, which was later withdrawn by Plaintiff—did the Court find that issues of fact precluded summary judgment. Defendants' response to Plaintiff's motion regarding infringement showed a complete disregard of the respective burdens on summary judgment and Defendants took virtually no efforts to rebut the claims of infringement made by Plaintiff. No reasonable litigant could realistically expect such a strategy to succeed.

The same is true for Defendants' invalidity arguments. Defendants made only general arguments concerning anticipation and obviousness, but did not engage in any sort of rigorous analysis that would enable them to meet their burden on summary judgment. No reasonable litigant could realistically expect that strategy to succeed.

The Court must then proceed to *Seagate*'s second requirement: whether this objectively-defined risk was either known or so obvious that it should have been known to Defendants. The Federal Circuit noted that the objective baselessness of an infringer's defenses may have a strong bearing on this issue. As set forth above, Defendants' defenses, assessed on the litigation record, were objectively baseless. Thus, this supports the conclusion that Defendants either knew or should have known of this objectively-defined risk.

---

[29] *Bard*, 682 F.3d at 1008.

[30] *Aqua Shield*, 774 F.3d at 774.

Defendants continue to rely on the denial of Plaintiff's motion for preliminary injunction by the New York court in support of their argument that they did not willfully infringe. However, the Federal Circuit held that "[t]he denial of Aqua Shield's motion for a preliminary injunction is . . . a legally insufficient reason for determining that IPC did not willfully infringe."[31]

Defendants further contend that they had no expectation that their enclosures infringed until the Court issued its ruling on infringement. However, Plaintiff correctly points out that it sent Defendants a cease-and-desist letter in 2005, putting Defendants on notice of their possible infringement. Defendants also argue that once the Court issued its ruling on infringement, they instructed their factory to modify its products by fixing the end panels. In response to this argument, the Federal Circuit noted that "[q]uestions remain about whether that change was actually implemented or whether the resulting products avoided infringement."[32] Defendants provided no further evidence on these points. There is no evidence that this change was ever made, nor is there evidence suggesting that this change resulted in a non-infringing product. Rather, the evidence suggests that Defendants continued to engage in infringing activities after the Court issued its rulings on infringement and validity. The evidence shows that Defendants offered to sell, sold, and imported products that had detachable end panels.[33] Based upon this, the Court finds that Defendants willfully infringed Plaintiff's patent at the very least after the Court issued its rulings on infringement and invalidity.

---

[31] *Id.*

[32] *Id.*

[33] Tr. Ex. HH; Trial Tr. 266–73.

C.     ENHANCED DAMAGES

35 U.S.C. § 284 states in pertinent part that "the court may increase the damages up to three times the amount found or assessed."[34] The Federal Circuit has held that "an award of enhanced damages requires a showing of willful infringement."[35] "But, a finding of willfulness does not require an award of enhanced damages; it merely permits it."[36] "[T]he decision to grant or deny enhanced damages remains firmly within the scope of the district court's reasoned discretion, informed by the totality of the circumstances."[37]

In exercising this discretion, the Court considers a number of factors, including:

(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.[38]

Considering these factors, the Court finds that an award of enhanced damages is not appropriate here. First, there is no evidence that Defendants deliberately copied Plaintiff's patented technology. Defendants presented testimony that they and others were making similar products prior to the issuance of the patent. Second, there is evidence that Defendants sought the

---

[34] 35 U.S.C. § 284.

[35] *In re Seagate*, 497 F.3d at 1368.

[36] *Id.*

[37] *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999).

[38] *Liquid Dynamics Corp. v. Vaughn Co., Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826–27 (Fed. Cir. 1992)).

advice of counsel and were informed that they could continue to sell their products.[39] Third, while Defendants' behavior during litigation was certainly less than ideal, it was not so egregious as to warrant enhanced damages. Fourth, there is little evidence concerning the size and financial condition of Defendants, other than the fact that they sold $2.7 million worth of infringing products. Fifth, for substantially the same reasons set forth above, this was not a close case. Sixth, Defendants' misconduct occurred over a significant duration, even after Plaintiff sent a cease-and-desist letter and the Court ruled on infringement and invalidity. Seventh, Defendants allege that they attempted remedial action. However, there is no evidence that Defendants actually took that action and, even if they did, it is questionable whether this resulted in a non-infringing product. Eighth, there is no evidence that Defendants' actions were taken out of a desire to harm Plaintiff. Finally, there is no evidence that Defendants attempted to conceal its misconduct.

Considering these factors and the totality of the circumstances, the Court declines to award enhanced damages.

D.  ATTORNEY'S FEES

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[40] The Supreme Court has recently held "that an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the

---

[39] Trial Tr. 53–54, 87–88, 248–52.
[40] 35 U.S.C. § 285.

case) or the unreasonable manner in which the case was litigated."[41]  This Court is to "determine whether a case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances."[42]

For substantially the same reasons set forth above, the Court finds that this is not an exceptional case and, therefore, declines to award attorney's fees.

### III.  CONCLUSION

Based upon the above, the Court awards Plaintiff a reasonable royalty in the amount of $216,000.  Plaintiff's request for enhanced damages and attorney's fees is DENIED.  The remaining portions of the Court's Judgment (Docket No. 179), including the permanent injunction, remain in effect.

The Clerk of the Court is directed to close this case forthwith.

DATED this 10th day of August, 2015.

>                         BY THE COURT:
>
>                         _____
>                         Ted Stewart
>                         United States District Judge

---

[41] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014).
[42] *Id.*